AO 91 (Rev. 12/10) Criminal Complaint

# SEALED United States District Court

NORTHERN DISTRICT OF

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 11 2014
TEXAS
CLERK, U.S. DISTRICT COURT
By_____
Deputy

UNITED STATES OF AMERICA

V.

JOSE DELEON

**COMPLAINT**

CASE NUMBER: 3-14-MJ-172-BF
(M-14-1989-M)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning on or about August of 2010 to the present, in the Dallas Division of the Northern District of Texas, defendant(s) did,

> knowingly and unlawfully conspiring to defraud the United States by engaging in the business of importing, manufacturing, or dealing in firearms without a license, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce,

in violation of Title 18, United States Code, Section(s) 371 and 922(a)(1)(A).

I further state that I am a(n) Special Agent with Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and that this complaint is based on the following facts:

> See attached Affidavit of Special Agent Kevin A. Mack, (ATF) which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof: XX Yes    No

Signature of Complainant
KEVIN A. MACK
Special Agent, (ATF)

Sworn to before me and subscribed in my presence, on this 11 day of March, 2014, at Dallas, Texas.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT

I, Kevin A. Mack, having been duly sworn, do depose and state the following:

1. I have personal knowledge of the facts herein set forth with the exception of the matters expressly stated to be based upon information from others, and I consider those people credible.

2. I am employed as a Special Agent by the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives and have been so employed for approximately 6 years. During the past six years, I have been involved in numerous investigations involving firearms and narcotic violations. As a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws, and know that it is a violation of:

   - 18 USC 371 – Conspiracy, if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner of for any purpose.
   - 18 USC 922 (a) (1) (A), for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

3. In August of 2010, MSH and Jose DeLEON met and began their partnership at a gun show within the Northern District of Texas. MSH sold Jose DeLEON firearms and exchanged contact information after DeLEON indicated he wanted to purchase additional firearms from MSH in the future.

4. On January 2, 2011, MSH purchased five (5) WASR-10 rifles and one (1) STAR pistol at the Original Fort Worth Gun Show, Fort Worth, Texas.

5. On January 13, 2011, U.S. Border Patrol agents x-rayed a truck that was enroute to Mexico from Hidalgo, Texas and found fifteen (15) firearms secreted in the vehicle's gas tank. Subsequently, the firearms were traced through the ATF National Tracing Center. Two (2) firearms were traced to RSL and one (1) was traced to GLB. These firearms were purchased as firearm receivers but recovered as completed, manufactured rifles. The remaining twelve (12) firearms had obliterated serial numbers. ATF was eventually able to raise and trace the original purchasers of the firearms. Trace results showed four (4) of the firearms were WASR rifles that MSH

purchased on January 2, 2011, only nine days before they were recovered. It was later determined that MSH purchased these firearms and immediately sold them to Jose DeLEON.

6. MSH met Jose DeLEON at predetermined locations to transfer the firearms to Jose DeLEON and receive payment. On two (2) occasions, MSH paid and utilized straw purchasers to acquire one hundred (100) firearm rifle receivers each. Those individuals indicated on the ATF 4473 firearm purchase form that they were the actual purchasers of the firearms receivers, when in fact MSH directed their activities and paid them to lie on the form. MSH immediately took possession of the purchased rifle receivers and delivered them to Jose DeLEON for payment.

7. From August of 2010 to January of 2011, MSH and Jose DeLEON conspired to purchase, deal and manufacture firearms without a license. MSH purchased (or directed others to purchase) at least 664 firearms and firearm receivers. Most of the firearms and receivers that MSH sold to DeLEON were AR and AK rifles. MSH became a class II dealer (Federal Firearms Licensee hereinafter "FFL") and operated a firearms business located in Irving, Texas. Agents learned that Jose DeLEON provided the firearms receivers he received from MSH to others in the Dallas area, who would then manufacture the receivers and turn them in to complete rifles. The investigation identified two of these individuals, GLB and RSL.

8. On February 12, 2011, Fort Worth Police Officers, working security at a gun show, observed GLB and two (2) other individuals (Jose M. DeLEON H/M DOB 06/08/1958 and JDM) working together in what appeared to be a firearms trafficking/straw purchase scheme. While at the gun show, GLB was acting as the negotiator in the firearms transactions. He negotiated the purchase of eighteen (18) long rifles and 20-30 lower receivers. GLB would then flag down Jose DeLEON, who would come over and pay for the firearms. Jose DeLEON would then flag down JDM, who would take the firearms out to Jose DeLEON's vehicle. Officers later conducted a traffic stop and identified several rifles, rifle receivers and pistols inside the vehicle. The firearms were not seized.

9. On March 9, 2011, Alcohol, Tobacco, Firearms and Explosives (ATF) Investigators contacted Federal Firearms Licensees (FFL) in reference to purchasers showing suspicious purchasing patterns that may be involved in possible trafficking and unlicensed dealer schemes. The query revealed suspicious purchasing patterns by both GLB and RSL.

10. The query revealed that GLB had purchased a total of (106) firearms and lower receivers (AR and AK types) and gun parts kits between April 2009 and February

Affidavit Page 2

2011. During this time period, GLB averaged five (5) firearm purchases per month from three (3) different FFLs.

11. The query also revealed that RSL had purchased a total of (45) AR-15 and AK74 firearm receivers and parts kits between October 9, 2010 and March 11, 2011. During this five (5) month period, RSL averaging nine (9) firearm purchases per month.

12. With information from online and local FFLs, on July 16, 2011, agents conducted a consensual search at GLB's residence and executed a federal search warrant on RSL's residence. During the search of RSL's residence, agents confiscated thirty-nine (39) firearms, 25,008 rounds of ammunition, 486 rifle and handgun magazines, firearms manufacturing machinery and tools. Only six (6) out of the forty-five (45) firearms were identified to still be in RSL's possession from the firearms query initiated on March 9, 2011. RSL had significant gun manufacturing tools in his residence, including a large metal press.

13. While searching GLB's home, agents found firearms parts, kits, tools and twelve (12) AR and AK type rifles. Only three (3) out of the one hundred and six (106) firearms were identified to still be in GLB's possession from the firearms query initiated on March 9, 2011. Agents also found a Nodak-Spud LLC, Model NDS-3, 7.62 caliber rifle, which was documented as being purchased by MSH as an FFL. This firearm was later recovered in Mexico in 2012. GLB was served with an ATF Cease and Desist Letter informing him to stop dealing in firearms until such time as he became an FFL.

14. During interviews, GLB and RSL identified Jose DeLEON as a buyer of their firearms. GLB stated Jose DeLEON told him the firearms (AR and AK type only) were going to ranchers in South Texas. GLB admitted to the selling firearms to Jose DeLEON. GLB estimated he and RSL sold a total of fifty (50) firearms to Jose DeLEON.

15. RSL advised he sold Jose DeLEON a couple of AKs, and GLB sold him a couple ARs (AR-15 style rifles). RSL stated Jose DeLEON told them (RSL/GLB) that he worked for the State Department of Education in computer systems and had ties to the Border Patrol with a government agency called "BorTex". Jose DeLEON informed them he was an ex-Navy Seal involved in the weapons training for civilian farmers near the border of Texas. RSL stated he and GLB then began manufacturing and fabricating firearms receivers for DeLEON.

16. RSL stated Jose DeLEON would meet them at gun shows or at GLB's house, where Jose DeLEON would sometimes sleep over. RSL advised sometime in April or May of 2011, Jose DeLEON would show up almost weekly with $20,000 - $40,000 dollars

Affidavit Page 3

buying ARs from GLB. RSL stated on one occasion he witnessed a transaction with Jose DeLEON and GLB with over 35 firearms. RSL also stated Jose DeLEON provided the money to purchase boxes of (rifle) magazines.

17. RSL stated a box of fifty (50) AK receivers showed up at GLB's house, and GLB gave RSL ten (10) firearm receivers for RSL to manufacture into completed firearms for Jose DeLEON. RSL told agents he promised to build 10 firearms for Jose DeLEON. Jose DeLEON provided RSL with $20,000 for this, but RSL could not finish completing all of the firearms because he got tied up with school. RSL advised this was during the "crazy" time when he and GLB were building a lot of firearms for Jose DeLEON.

18. RSL advised GLB told him Jose DeLEON was also buying firearms from other people in the Dallas-Fort Worth area; one in particular was an Irving class II dealer (later identified as MSH). GLB informed RSL that Jose DeLEON had someone on the border who was smuggling the firearms into Mexico. RSL stated he told GLB he was pulling out of the manufacturing deal but GLB told him he had to pay back $10,000 for the parts kits. GLB advised RSL that Jose DeLEON was connected to the cartels (Mexican drug cartels).

19. To date, thirty six (36) firearms have been recovered in incidents/crimes in Mexico from MSH, six (6) firearms from GLB and five (5) firearms from RSL. It is worth noting that the ATF firearms tracing center is only able to trace back the original purchaser of firearms and firearms receivers, not any subsequent purchasers.

20. DeLEON has been identified as: Jose Maria DeLEON Jr., Hispanic male, DOB 06/08/1958, TX DL 11440717, address 504 West 2nd, Camp Wood, TX 78504.

21. As described in paragraphs 1-20 above, I believe that Jose Maria DeLEON conspired with MSH, GLD and RSL to engage in the business of manufacturing and/or dealing firearms without a license. Specifically, DeLEON purchased hundreds of firearm receivers from MSH, and then he would give them to GLB and RSL to manufacture into fully-functional firearms. Neither GLB nor RSL had a license to manufacture these firearms. Then, DeLEON would transfer the firearms to others, who took them across the Mexican border.

22. Accordingly, I have probable cause to believe that Jose Maria DeLEON committed violations of the United Sates Criminal Law, to wit, Title 18 U.S.C. Section 371 – conspiracy to commit Title 18 U.S.C. Section 922 (a) (1) (A), namely engaging in the business of manufacturing, or dealing in firearms without a license with MSH, GLB and RSL.

KEVIN A. MACK
Special Agent, ATF

Subscribed and sworn to before me this _11_ day of March 2014.

JUDGE PAUL D. STICKNEY
United States Magistrate Judge

Affidavit Page 5